**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:06-cr-304 (CFD) |
| | : | |
| JOSEPH E. LAMBERT | : | |
| _____ | : | |
| | : | |
| JOSEPH E. LAMBERT | : | |
| | : | |
| v. | : | 3:10-cv-788 (CFD) |
| | : | |
| UNITED STATES OF AMERICA | : | |

**RULING ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Joseph E. Lambert, Jr. moves *pro se* pursuant to 28 U.S.C. § 2255 to vacate,

set aside, or correct his October 22, 2007 sentence of 188 months imprisonment.

**I.     Procedural History and Factual Background**

On November 20, 2006, Lambert was indicted for one count of armed bank robbery in

violation of 18 U.S.C. §§ 2113(a) and (d).  Lambert pled guilty to the indictment on March 5,

2007.  In his plea agreement, Lambert stipulated to the following facts:  On October 26, 2006,

Lambert robbed the People's Bank in Mystic, Connecticut.  After entering the bank, Lambert

demanded money from two tellers.  During the robbery, Lambert held and pointed an eight-inch

silver pipe while making statements referring to "shooting and/or a gun."  At this time, Lambert

was wearing large leather work gloves that concealed that he was holding a metal pipe instead of

a gun.  During the robbery, two customers and four bank employees were in the bank, and

several of those present "feared for their lives" because of Lambert's statements about the gun.

At least one customer "feared for her life" when she saw Lambert with what she thought was a

-1-

silver handgun and when she heard him make the statements about the gun.

On October 22, 2007, this Court sentenced Lambert to 188 months of incarceration. During the sentencing hearing, Lambert's counsel raised two principal sentencing arguments: 1) he did not meet the requirements of career offender status under the Sentencing Guidelines ("Guidelines"), U.S.S.G. § 4B1.1, because his prior bank robbery convictions were part of the same course of conduct and thus did not constitute two separate felony convictions for crimes of violence; and 2) he deserved a downward departure from his career offender status because his criminal history was overstated, he used a pipe rather than an actual gun in the People's Bank robbery, and he would have an extraordinarily difficult time in prison because of his poor health and because of his cooperation with the authorities in 1996 regarding a homicide that had occurred during a former period of incarceration at USP Lewisburg. The sentencing colloquy largely focused on the career offender issue of related prior crimes of violence. This Court ruled that Lambert was a career offender and therefore U.S.S.G. § 4B1.1 rather than U.S.S.G. § 2B3.1 applied in setting the offense level (31) and criminal history category (VI), and denied the request for a downward departure. He was sentenced at the bottom of the career offender Guidelines range of 188 to 235 months.

Lambert appealed his sentence, first arguing that career offender status did not apply because his prior bank robberies were part of a "common scheme or plan" and therefore his convictions for those robberies should not have been counted separately to arrive at the career offender status. U.S. v. Lambert, 311 Fed. Appx. 391, 393 (2d Cir. 2009). The Court of Appeals affirmed the application of the career offender enhancement, holding that this Court "acted well within its discretion" in its analysis of the prior robberies. Id. Lambert also argued that this Court erred by "failing to consider whether a non-Guidelines sentence would have been

sufficient to do justice consistent with the parsimony clause of 18 U.S.C. § 3553(a)."  Id.  The
Court of Appeals affirmed on this point as well.  Id.

        After his sentencing, Lambert was designated to the USP Terre Haute facility rather than
the Federal Medical Center at Fort Devens ("Fort Devens"), which was recommended by this
Court in the Judgment, allegedly as a result of a "mistake" by the Bureau of Prisons ("BOP").[1]
After a year at USP Terre Haute, Lambert was recognized by other inmates as a government
cooperator.  Officials at USP Terre Haute received information about threats to Lambert's safety
and placed him in Administrative Detention, Special Housing ("Special Housing"), where he
was denied some privileges provided to the general population.  He remained in Special Housing
for six months until he was transferred to FCI Victorville in California.  He was also recognized
there as a cooperator and placed in Special Housing.  Shortly thereafter, he was transferred to the
Federal Medical Center at Butner ("FMC Butner").  Lambert was confined at FMC Butner at the
time of his petition, and as of this ruling, Lambert is located at FCI Butner, an adjacent medium
security facility.

        At the time of his sentencing in 2007, Lambert had a severely deteriorated left hip and
Hepatitis C.  During his time at USP Terre Haute, he received a total hip replacement.  After
being placed in Special Housing there, Lambert fell in a steel shower stall and damaged the
replaced hip.  However, Lambert claims that his complaints to the medical personnel at USP
Terre Haute were largely ignored.  In July 2009, the attending surgeon at USP Terre Haute found
that Lambert had a high risk of infection and needed additional medical care.  When Lambert
was transferred to USP Victorville, an orthopedic surgeon allegedly found multiple hardware

---

        [1]  These facts were taken from Lambert's petition and are assumed true for the purpose of
resolving the petition.

malfunctions and infection in his replaced hip.  In February 2010, the prosthetic hip was

removed and a significant infection was found surrounding the hip joint, causing Lambert to be

bedridden for eight weeks.  As of May 2010, the infection had not returned, and a hip

replacement had been scheduled for later that year.  On May 20, 2010, Lambert filed this petition

for habeas corpus relief.

## II.    Discussion

Lambert requests relief on two grounds.[2]  He first challenges the length of the sentence,

apparently contending that the Guidelines enhancement for possession or use of a dangerous

weapon during the robbery was incorrect because the metal pipe he carried did not constitute a

dangerous weapon under the Guidelines.  He argues that this issue was not raised in his appeal

because of ineffective assistance of counsel.  In his second ground, Lambert requests a

downward departure or adjustment of his sentence for two reasons: 1) his erroneous placement

in a high security institution, plus indifference by prison medical personnel, aggravated the

problems he was having with his recently replaced hip; and 2) his previous cooperation in the

prison homicide investigation caused his placement in protective custody in conditions more

penal than what was contemplated by this Court in sentencing.

### A.    Legal Standard

Under Section 2255, a prisoner who moves to vacate, set aside, or correct his sentence is

entitled to a prompt hearing to "determine the issues and make findings of fact and conclusions

of law with respect thereto," unless "the motion and the files and records of the case

---

[2]  Because Lambert is proceeding *pro se*, the Court reads his submissions broadly.  See
Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2008); Restrepo v. United States, Nos.
3:09CV66, 3:99CR85, 2010 WL 56107, at *6 (D. Conn. Jan. 6, 2010).

conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b).

To warrant a hearing, petitioner "must set forth specific facts which he is in a position to

establish by competent evidence." LoCasio v. United States, 395 F.3d 51, 57 (2d Cir. 2005).

The district court does not need to assume the credibility of the petitioner's factual assertions,

but may look to the record in the underlying proceedings. See Puglisi v. United States, 586 F.3d

209, 214 (2d Cir. 2009). If it "plainly appears from the motion, any attached exhibits, and the

record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss

the motion." Id. at 213 (citing Rules Governing §2255 Proceedings for the United States District

Courts, Rule 4(b), 28 U.S.C. foll. § 2255); Webb v. Weiss, 69 F. Supp. 335, 336 (D. Conn. 1999)

(holding that an evidentiary hearing on a § 2241 petition was not required when there were no

factual issues in controversy). Cf. Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001)

(holding that it is within the district court's discretion to expand the record, for example by

requiring an affidavit from the attorney, without conducting a full hearing). The Court finds that

there is no need to expand the record to decide this motion.

### B.    Ground 1

28 U.S.C. § 2255 permits a federal prisoner to move to vacate, set aside or correct his

sentence if the sentence was imposed in violation of the Constitution or laws of the United States

or if the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a). "As a

general rule, 'relief is available under § 2255 only for a constitutional error, a lack of jurisdiction

in the sentencing court, or an error of law that constitutes a fundamental defect which inherently

results in a complete miscarriage of justice.'" Napoli v. United States, 32 F.3d 31, 35 (2d Cir.

1994) (quoting Hardy v. United States, 878 F.2d 94, 97 (2d Cir. 1989)). "Insofar as claims

regarding a sentencing court's error in failing to properly apply the Sentencing Guidelines are

neither constitutional nor jurisdictional, . . . absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant has failed to raise them on appeal." Graziano v. U.S., 83 F.3d 587, 590 (2d Cir. 1996).

Lambert's claim concerning the dangerous weapon enhancement is not constitutional or jurisdictional in nature; rather, he argues that the pipe he used in his robbery was not a "dangerous weapon" justifying what he believes to be a Guidelines enhancement.  Lambert argues that his claim concerning the alleged Guidelines error was not raised on appeal because of ineffective assistance of appellate counsel.  "A claim of ineffective assistance of counsel is analyzed under the two-part test set forth in Strickland v. Washington . . . ." Contino v. United States, 535 F.3d 124, 127-28 (2d Cir. 2008).  To satisfy the first part, the petitioner must show that counsel's representation "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984).  Under the Strickland test, judicial scrutiny of counsel's performance must be highly deferential.  See id. at 689.  In the appellate context, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  However, a petitioner can demonstrate ineffective counsel by showing that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id.

To satisfy the second part of the test, the petitioner must prove prejudice, namely, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 692, 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  A petitioner has to demonstrate that "there was a reasonable probability that his claim would have

been successful" in the appellate court.  Mayo, 13 F.3d at 534 (internal marks omitted).

Lambert's dangerous weapon argument fails to satisfy either of the Strickland prongs.  First, Lambert pled guilty to violating 18 U.S.C. §§ 2113(a) and (d), which prohibit a bank robbery committed with the use of a dangerous weapon or device.  Lambert did not dispute at his plea hearing or at sentencing that the metal pipe he carried qualified as a "dangerous weapon" as set forth in the *statute*, § 2113(d), which increases the penalty for bank robbery at § 2113(a) by increasing the maximum statutory penalty from twenty to twenty-five years.  It is well-established that a defendant need not carry an operable gun in order to commit bank robbery with a dangerous weapon under § 2113(d).  McLaughlin v. U.S., 476 U.S. 16, 17-18 & n.3 (1986) (noting that "Congress regarded incitement of fear as sufficient to characterize an apparently dangerous article (such as a wooden gun) as 'dangerous' within the meaning of the statute"); see also Gebron v. U.S., 2001 WL 709246, at *5 (finding that, because of McLaughlin, counsel was not ineffective for failing to argue that jury instructions stating that the weapon or device need not in fact be capable of inflicting harm if it instils fear in the average citizen were improper).

This issue of whether § 2113(d) was satisfied by Lambert's use of the pipe during the People's Bank robbery was extensively addressed at the guilty plea hearing.  The Court found that Lambert's admissions at the guilty plea proceedings, including the written stipulation of facts attached to his plea agreement, satisfied the dangerous weapon element of § 2113(d).[3]  Therefore, the Court accepted Lambert's guilty plea to that section of the statute.

Second, the fact that Lambert did not actually carry a dangerous weapon was irrelevant in

---

[3]  Lambert did not raise in his direct appeal that § 2113(d) was not satisfied.  Based on the concessions made in the plea agreement, the stipulation attached to the plea agreement, and at sentencing, there was no basis on appeal to claim that § 2113(d) was not satisfied.

calculating his sentence. While this claim would have been relevant had he been sentenced under the Guidelines section for robbery, U.S.S.G. § 2B3.1, which provides for additional offense levels if the robbery was committed with a brandished dangerous weapon, Lambert was instead sentenced under the career offender provision of U.S.S.G. § 4B1.1. § 4B1.1 only requires that the instant offense "is a felony that is either a crime of violence or a controlled substance offense." § 4B1.1(a)(2). A "crime of violence" includes robbery under this provision of the Guidelines, Application Note 1 to U.S.S.G. § 4B1.2, and by definition, a bank robbery involves "force and violence" or "intimidation." 18 U.S.C. § 2113(a). Lambert's conviction therefore would qualify as a "crime of violence" even if the pipe did not qualify as a dangerous weapon, or even if Lambert had only pled guilty to 18 U.S.C. § 2113(a), rather than to the additional element in 18 U.S.C. § 2113(d). Further, Lambert admits in his petition that he used the metal pipe to create a "'threat of intimidation or violence,'" and as mentioned above, Lambert stipulated at the time of the guilty plea to the fact that he held and pointed the pipe and referred to shooting and/or a gun.[4]

 Because Lambert was sentenced as a career offender and therefore there was no separate enhancement of his sentence for a dangerous weapon, his counsel argued the only available basis for relief at the sentencing hearing, which was to request a downward departure for the fact that the weapon was in fact a pipe and not a gun, that his criminal history was overstated, and that his prison time would be extraordinarily difficult because of his health and his previous cooperation. This Court considered this argument but did not grant the downward departure, a decision within

---

[4] Lambert argues in his petition that "[n]o reasonable person would have perceived [the pipe] to be a 'dangerous weapon,'" but in his plea, Lambert stipulated to the fact that at least one customer at the bank thought she saw Lambert with a silver handgun (Stipulation of Offense Conduct).

this Court's discretion.

For all of these reasons, Lambert's argument concerning the metal pipe is not "clearly stronger" than those presented by Lambert's appellate counsel, see Mayo, 13 F.3d at 533 (internal quotations omitted), and therefore Lambert's ineffective assistance of counsel claim fails the first prong of the Strickland test.  Lambert was also not prejudiced by his counsel's failure to raise his argument because the nature of the metal pipe as a weapon was not relevant to the career offender basis of Lambert's sentence. Thus, the Court of Appeals would not have vacated his sentence based on his argument that this Court wrongly applied a dangerous weapon enhancement.  Lambert cannot meet either of the Strickland prongs, and both are needed to demonstrate that his appellate counsel was ineffective.

Since Lambert's appellate counsel was not ineffective, this Court can only consider Lambert's claim if his sentence constituted a "complete miscarriage of justice."  It is plainly apparent that Lambert did not suffer a miscarriage of justice.  Lambert received his sentence at the bottom of the Guidelines range for a career offender, and the Court of Appeals has already determined that this Court appropriately found Lambert to be such.  For these reasons, Lambert's § 2255 claim based on Ground 1 is dismissed.

### C.     Ground 2

Lambert's second ground for relief under § 2255 is based on both the complications resulting from his hip replacement and the threats he faced from other inmates who knew of his cooperation in the prison homicide case.  He argues that the BOP miscalculated his security classification, failed to place him in FMC Fort Devens as recommended by this Court, and was repeatedly inattentive to his medical needs.  Thus, through this ground, Lambert challenges the execution of his sentence rather than the sentence itself.  § 2255 is not the appropriate vehicle to

bring such a challenge because § 2255 petitions must be "directed to the sentence as it was

imposed, not to the manner in which it is being executed." Corrao v. United States, 152 F.3d

188, 191 (2d Cir. 1998).  Lambert's claim should have been brought under 28 U.S. C. § 2241,

which allows a challenge to the "*execution* of a federal prisoner's sentence, including such

matters as the administration of parole, computation of a prisoner's sentence by prison officials,

prison disciplinary actions, prison transfers, type of detention and prison conditions." Jiminian

v. Nash, 245 F.3d 144, 146 (2d Cir. 2001).  However, this Court construes a *pro se* litigant's

pleadings liberally, and if Lambert has pled facts in his that would entitle him to habeas relief,

"that petition should not be dismissed because [he] did not correctly identify the statute or rule of

law that provides the relief he seeks." Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008)

(finding that the district court erred in dismissing a petitioner's damages claims brought under §

2241 rather than the civil rights statutes).  Therefore, this Court will consider Lambert's second

ground under § 2241.

   As a preliminary matter, the government does not seem to dispute the facts in Lambert's

second ground; instead, it argues that his claim for relief under this ground fails as a matter of

law.  This Court agrees.  First, Lambert asserts that his cooperation in the homicide investigation

and subsequent threats by fellow inmates forced the BOP to place him in protective custody and

to transfer him far from his family.  He seems to argue that because his time in prison has

involved unusual conditions that make his punishment more difficult than that of the typical

inmate, this Court should now reduce his sentence.  However, Lambert's cooperation occurred in

1996, well before the commission of the 2006 bank robbery.  Even though Lambert had the

opportunity to consider the problems he might face in returning to prison before committing the

2006 robbery, this Court took into consideration these unique circumstances when sentencing

Lambert.  Beyond this consideration, this Court cannot accommodate the difficulties that Lambert faces, particularly through habeas relief.[5]

Second, Lambert argues that he was placed in an inappropriate facility and as a result never received adequate treatment for his hip condition, eventually requiring removal of his prosthetic hip and resulting in a serious infection.  However, all of Lambert's claims concerning inadequate medical care concern the USP Terre Haute facility; Lambert is no longer at that facility, and he makes no allegations in his petition that he is not receiving adequate medical care now.  Geddes v. Lindsay, 2008 WL 2620129, at *3 ("Injunctive relief [under 2241] relating to conditions of imprisonment, however, cannot be granted if the petitioner is no longer confined in the facility identified in the request for relief.").  Cf. Roba v. U.S., 604 F.2d 215, 219 (2d Cir. 1979) (holding that a hearing for habeas relief under § 2241 was available to petitioner to prevent him from being immediately transported to another facility while he faced a life-threatening medical condition).  At this time, Lambert is incarcerated in FCI Butner, which is part of the same complex as FMC Butner and thus allows him access to medical facilities for any pending medical needs.

And finally, this Court at sentencing only had the authority to make a recommendation as to the location of a facility for Lambert's confinement; it had no authority to order the BOP to place him in one particular location.  See U.S. v. Williams, 65 F.3d 301, 307 (2d Cir. 1995)

---

[5] While a habeas petition is the appropriate vehicle to receive a less restrictive form of custody, see Hop Wah v. Coughlin, 1987 WL 33590, at *4 (S.D.N.Y. 1987) (citing McCollum v. Miller, 695 F.2d 1044, 1046 (7th Cir. 1982), Lambert was no longer in restrictive custody at the time of his petition and does not request a placement into less restrictive custody.  Further, the actual *duration* of Lambert's sentence is unaffected by his placement in protective custody.  Cf. Linares v. Barkley, No. 9:09-cv-1191, 2010 WL 4962998, at *1 n.2 (N.D.N.Y Oct. 8, 2010) ("[B]ecause the duration of [petitioner's] confinement could have been affected by the outcome of the litigation, it was properly brought as a habeas petition.").

(upholding downward departure at the sentencing stage for rehabilitative purposes because the district court did not have authority to order that the defendant be placed in a particular rehabilitation program).  Therefore, any alleged error by the BOP in making its placement decision cannot be compensated for by this Court through a sentence reduction.

**III.**     **Conclusion**

Accordingly, Lambert's Motion to Vacate, Set Aside, or Correct his Sentence is DENIED.  Moreover, because Mr. Lambert has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. 2253(c)(2).

SO ORDERED this 19th day of October 2011, at Hartford, Connecticut.

 **/s/ Christopher F. Droney**_____
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**